IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEAN A. McGEEHAN, Plaintiff | Civil Action No. 03-CV-06312 |
| vs. | |
| AMERICAN GENERAL ASSURANCE COMPANY, Defendant | |
| and | |
| AMERICAN GENERAL ASSURANCE COMPANY, Third-Party Plaintiff | |
| vs. | |
| LAFAYETTE AMBASSADOR BANK, Third-Party Defendant | |

* * *

APPEARANCES:

MICHAEL P. McINTYRE, ESQUIRE
On behalf of Plaintiff

PETER JASON, ESQUIRE
On behalf of Defendant/Third-Party Plaintiff
American General Assurance Company

* * *

O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

This matter is before the court on the Motion for Summary Judgment of Defendant American General Assurance Company

filed July 30, 2004.[1] Plaintiff's Response to Motion for Summary Judgment of Defendant American General Assurance Company was filed August 23, 2004. For the reasons expressed below we grant defendant's motion for summary judgment.

Specifically, we direct that the certificate of insurance that is the subject of this action is rescinded; that defendant American General Assurance Company ("American General") is discharged from any, and all, liability with respect to the certificate of insurance in this matter; and that plaintiff Jean A. McGeehan surrender and deliver the certificate of insurance to defendant for cancellation. In addition we dismiss the Third-Party Complaint of American General Assurance Company against third-party defendant Lafayette Ambassador Bank ("Bank") as moot.[2]

Procedural History

On October 13, 2003 plaintiff Jean McGeehan filed a Complaint in the Court of Common Pleas of Lehigh County,

---

[1] On August 27, 2004 American General Assurance Company filed a Motion for Leave to File a Reply Memorandum and Reply Affidavit in Further Support of Defendant's Motion for Summary Judgment and for Leave to File a Statement of Material Facts Nunc Pro Tunc. Plaintiff did not file a response to defendant's motion. We grant defendant's request for leave to file a reply brief and for leave to file its statement of material facts nunc pro tunc as uncontested. See E.D. Pa.R.Civ.P. 7.1(c). Accordingly, we consider both defendant's reply brief and its statement of material facts in support of its motion for summary judgment.

[2] The Third-Party Complaint asserts a cause of action for indemnification by American General against the Bank. Because we have granted American General summary judgment on plaintiff's Complaint, there can be no recovery against it that American General could attempt to collect from the Bank. Thus, American General's indemnification claim against the Bank is moot.

Pennsylvania. Plaintiff's Complaint asserts a cause of action for breach of insurance contract and for bad faith pursuant to 42 Pa. C.S.A. § 8371.

On October 20, 2003 defendant American General filed its Notice of Removal asserting diversity of citizenship and an amount in controversy in excess of $75,000.[3] On December 5, 2003 American General filed its Answer and Counterclaim to plaintiff's Complaint. Thereafter, American General filed its Third-Party Complaint against the Bank asserting a cause of action for indemnification.

## Facts

Based upon the pleadings, record papers, depositions, affidavits and exhibits, the pertinent facts are as follows. On February 25, 2002 plaintiff Jean A. McGeehan and her late husband James F. McGeehan, Jr. ("Decedent"), applied for a loan from Lafayette Ambassador Bank. Plaintiff asserts that she went to the Bank on February 25, 2002 by herself and without her husband. A Bank employee, Sharon Freyer, asserts that both Mr. and Mrs. McGeehan were present when the loan application was taken.

At the time of the application, the McGeehans were solicited by Mrs. Freyer to purchase credit life insurance in connection with the loan. Mrs. McGeehan contends that she

---

[3] 28 U.S.C. § 1332.

advised Mrs. Freyer that she suffered from Lupus[4] and that her husband had previously experienced a mild stroke. Mrs. Freyer disputes that there was any discussion of the medical history of either Mr. or Mrs. McGeehan.

On March 6, 2002 Mr. and Mrs. McGeehan returned to the Bank for the loan closing. At that time, they were given numerous documents, previously prepared by Mrs. Freyer, for their review and signature, including the insurance application which is the crux of this matter. Plaintiff testified that neither she nor her husband read any of the documents, but merely signed each document and returned them to Mrs. Freyer.

Mrs. Freyer testified that the McGeehans signed all of the loan documents without reading them, except that the McGeehans completed certain portions of the insurance application. Mrs. Freyer acted as a subscribing witness to the execution of the life insurance application. Mrs. Freyer further testified that, in addition to a signature, the insurance application required certain questions to be answered, including certain health questions and a space for writing in date of birth. Specifically, Mrs. Freyer recalled seeing Mr. McGeehan read the crucial health question on the insurance application and

---

[4] Lupus is a medical condition and "name originally given to localized destruction or degeneration of the skin caused by various cutaneous diseases. Although the term was formerly used to designate lupus vulgaris and now lupus erythematosus, without a modifier it has no specific meaning." Dorlands Illustrated Medical Dictionary, (27th Edition, 1998), page 958.

answering them by inserting with an "X" in the "no" box on the application to indicate that he did not have those medical conditions. Mrs. Freyer testified that she signed the form as a witness after the McGeehans and that the application information was filed in.

Question 2 on the loan application concerns the health and medical treatment of each applicant. The question was answered "no" regarding both plaintiff and Decedent, indicating that within the past three years, neither of them had any adverse medical history relating to any medical conditions enumerated in the question, including whether either applicant had suffered a stroke.

The parties do not dispute that Decedent suffered a stroke in August 2000 and that the onset of the stroke was less than three years before the date of the insurance application. Plaintiff concedes that the health question should have been answered "yes" as it relates to Decedent.

American General issued a certificate of insurance to plaintiff and Decedent based upon the representations contained in the application. The Decedent died on March 10, 2003. After Decedent's death, American General discovered the misrepresentation concerning Decedent's health history and denied plaintiff's claim for a death benefit under the credit life insurance policy.

## Standard of Review

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Federal Home Loan Mortgage Corporation v. Scottsdale Insurance Company, 316 F.3d 431, 433 (3d Cir. 2003). Only facts that may affect the outcome of a case are "material". Moreover, all reasonable inferences from the record are drawn in favor of the non-movant. Anderson, supra.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. See Watson v. Eastman Kodak Company, 235 F.3d 851, 857-858 (3d Cir. 2000). A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in her pleadings, but rather must present competent evidence from which a jury could reasonably find in her favor. Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Woods v. Bentsen, 889 F. Supp. 179, 184 (E.D. Pa. 1995).

## Discussion

It is undisputed that Pennsylvania law governs the issues in this diversity action. In Pennsylvania, an insurer may rescind an insurance policy because of a misrepresentation in the application if: (1) the representation was false; (2) the misrepresentation was material to the risk being insured; and (3) the insured knew that the representation was false when made or the insured made the representation in bad faith. Adams v. Reassure America Life Insurance Company, No. Civ.A. 01-0319, 2003 U.S. Dist LEXIS 5433 (M.D. Pa. March 31, 2003).

As to the first element, that the application for insurance contained a misrepresentation, the record is clear. The falsity of the representation has been conceded by plaintiff. Plaintiff admits that both she and her husband knew that he had suffered a stroke in August 2000 and the question should have been answered "yes". Thus, the record establishes that the application for insurance contained a misrepresentation.

The second element of the test is that the misrepresentation was material to the risk being insured.

> Materiality is generally considered a mixed question of fact and law for the jury, but if "reasonable minds cannot differ on the question of materiality," the court may resolve the issue at the summary judgment stage. Information on an application is material "if knowledge or ignorance of it would influence the decision of the issuing insurer to issue the policy, or the ability of the

> insurer to evaluate the degree and character of risk, or the determination of the appropriate premium rate."

Jung v. Nationwide Mutual Fire Insurance Company, 949 F. Supp. 353, 357 (E.D. Pa. 1997). In this case, plaintiff concedes that there is no issue regarding the materiality prong.[5] Accordingly, we conclude that defendant has satisfied the second element of the test.

The final element of the rescission test requires that plaintiff and Decedent either knew the misrepresentation was false when made or was made in bad faith. Plaintiff asserts that there are genuine issues of material fact that prevent a grant of summary judgment. Specifically, plaintiff asserts that there is an issue of fact whether plaintiff and decedent read the application, or whether either of them answered the question at issue.

Plaintiff testified that all she and her husband did was sign the application and that neither of them read the application or any other document. Plaintiff denied that either she or her husband answered the question or filled in their respective dates of birth. Relying upon the testimony of Sharon Freyer, defendant contends that Decedent did read the application, filled in the required information and that both plaintiff and Decedent signed the form.

---

[5] Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment, page 3.

Plaintiff contends that Sharon Freyer is not credible and that neither Decedent nor plaintiff read the application. In addition, plaintiff asserts that on February 25, 2002 she told Mrs. Freyer about the medical condition of both applicants. Thus, plaintiff argues, it is for a jury to determine whom to believe. Plaintiff contends that if the jury determines that Decedent did read and complete the application, then there is an issue to be resolved whether this was a knowing falsity or merely an innocent mistake, in light of plaintiff's disputed testimony that she made full disclosure of the decedent's health condition on February 25, 2002.

We agree with plaintiff that there are disputed facts in this matter. However, for the following reasons, we disagree that the disputed facts revolve around any issue which is material to the determination of this matter.

It is well-settled under Pennsylvania law that an insured's failure to read his answers to questions before certifying to their accuracy constitutes bad faith as a matter of law. Prevete v. Metropolitan Life Insurance Company, 343 Pa. 365, 22 A.2d 691 (1941). Moreover, plaintiff may not avoid the responsibility imposed by the application by signing a blank form and leaving it to another to fill in the appropriate response. Jung, 949 F. Supp. at 358. "Even if the applicant provided correct information to the individual, [such as the Bank

representative], who is entrusted to fill out the form, the failure of the applicant to review and correct the information which was improperly recorded constitutes bad faith." Adams, 2003 U.S. Dist. Lexis 5433 at *24-25.

In this case, the conflict between the testimony of plaintiff and Mrs. Freyer is of no import. If plaintiff told Mrs. Freyer about the medical condition of Decedent and that information was incorrectly put on the application by Mrs. Freyer and neither plaintiff nor Decedent read the application prior to signing it, then that constitutes bad faith under Pennsylvania law and permits rescission. If plaintiff or decedent did answer the questions, then (based upon plaintiff's deposition testimony) the question regarding Decedent having had a prior stroke was clearly answered falsely, and that would permit rescission. Thus, because the representation on the application was either false when made or was made in bad faith as a matter of law we conclude that defendant is entitled to rescission of the insurance contract.

Next, we address plaintiff's assertions that defendant allegedly violated two statutes which would make the insurance contract inadmissible at trial and, thus, make summary judgment inappropriate. Specifically, plaintiff asserts defendant

violated 40 P.S. §§ 441[6] and 511a[7].

Initially, we address plaintiff's claim relating to 40 P.S. § 441. This section provides:

> **§ 441. Statement by insured as evidence**
>
> No statement made by an insured shall be received in evidence in any controversy between the parties to, or a claimant or claimants interested in, a life insurance or health and accident policy unless a copy of the document containing the statement is or has been furnished to such person or those legally acting on his behalf in the controversy.

Plaintiff asserts that even though the relevant caselaw makes it clear that the requirement of this statute for providing the insured's statement may be met by doing so at any time prior to trial,[8] plaintiff asserts that a violation of the statute occurred when the Bank employee failed to give plaintiff and decedent a copy of the life insurance application at the time of closing. We disagree.

Section 441 was amended in 1997 to read as it presently does. Previously, Section 441 required that a copy of the application be delivered with the policy. We cannot disregard the plain language of the statute and the caselaw interpreting

---

[6] Act of May 17, 1921, P.L. 682, art. III, § 318, as amended, 40 P.S. § 441.

[7] Act of May 17, 1921, P.L. 682, art. IV, § 411a, as amended, 40 P.S. § 511a.

[8] See Prousi v. UNUM Life Insurance Company of America, 77 F. Supp. 2d 665 (E.D. Pa. 1999).

it, to restrict the introduction into evidence of the life insurance application to insulate plaintiff from an otherwise proper use of the application. A copy of the life insurance application was attached as an exhibit to defendant's Answer and Counterclaim filed December 5, 2003. Therefore, it is clear that a copy of the document was provided prior to trial as required by the caselaw interpreting the statute. Prousi, supra. Accordingly, in the absence of any authority to the contrary, we conclude that plaintiff's assertion of a violation of Section 441 is without merit.

Finally, we address plaintiff assertion that defendant violated 40 P.S. § 511a. This section provides, in pertinent part:

> In any case where . . . the agent of the insurer recording the answers of the applicant where a medical examination is waived . . . shall issue a certificate of health, or declare the applicant a fit subject for insurance . . . it shall be estopped from setting up in defense of the action on the policy or certificate issued to the insured, that the insured was not in the condition of health required by the policy or certificate . . . or the recording of answers of the applicant where a medical examination is waived, unless the same was procured by or through the fraud, deceit, or misrepresentation of or on behalf of the insured.

Plaintiff asserts that the plain language of this statute requires independent proof of Decedent's fraudulent intent to deceive before the insurance application can be

admitted. Defendant contends that the Bank did not issue a certificate of health in this matter because the nature of the application process did not require either a medical examination or, in the alternative, a certificate of health from the Bank. We agree with defendant.

There is no evidence of record indicating that the Bank, as agent for the insurer, issued a certificate of health in this matter. To the contrary, the Reply Affidavit of Wesley Jarvis, attached as an exhibit to defendant's reply brief, indicates that no such certificate of health was either required or issued by the Bank in this matter.

Decedent's eligibility for life insurance was determined entirely on his written answer to the health question. If the answer to the health question had been "yes", Decedent would not have been eligible for life insurance. If, as here, the answer to the health question were "no", Decedent was eligible for the life insurance if he was within the age restriction, which is not in dispute. There was no requirement for a medical examination. Thus, there could be no waiver of the medical examination which would trigger the requirement for a certificate of health to be issued. Accordingly, we conclude that plaintiff's assertion regarding the applicability of Section 511a is not supported by the record and is without merit.

Conclusion

For all the foregoing reasons, we grant the Motion for Summary Judgment of Defendant American General Assurance Company. We further grant summary judgment on defendant's counterclaim seeking rescission of the certificate of insurance.